## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL D. ARRINGTON,

      Plaintiff,

                                 Civil Action No.

      Vs.                          JURY TRIAL DEMAND

CITY OF BOSTON And Commissioner
of the Boston Police Department
WILLIAM GROSS,  CITY OF BOSTON
Police Department Cell Site Simulator
Operator JOHN DOES, HORACE COLEMAN,

      Defendants,

FILED
IN CLERKS OFFICE
2020 JUN 25  PM 12: 13
U.S. DISTRICT COURT
DISTRICT OF MASS.

## INTRODUCTION

1.  " Modern cell phones are just another technological convenience. With all they contain and all they may reveal, they hold for many Americans' the privacies of life.

2.  The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." Riley v. California 134 S. Ct. 2494-95 (2014) (quoting Boyd v United States, 116 U.S. 616, 630 (1886)).

3.  This is an action pursuant to 42 U.S.C 1983 and state law to challenge the warrantless deployment of cell site simulator by the Boston Police Department ("BPD") intercepting Plaintiff's personal private information from his cell phone using " cell site simulators" also known colloquially as "stingrays."

4.  Cell site simulators are powerful technological devices that act as fake cell phone towers to surreptitiously obtain personal information from cell phones within their geographical range, which can extend more than a mile from the device.

5.  For example, cell site simulators have the power to obtain identifying information about cell phones intercept phone calls or text messages made using the phone, reveal website browsing histories, and track a phone's cumulative movements.

6.  BPD owns and operates an arsenal of cell site simulators with these intrusive capabilities.   July 2014 BPD acquired a upgrade for the cell-site simulator that the police department  already own.

7.   Notwithstanding the potential of cell site simulators to intrude on the privacy and property of law-abiding citizens, BPD has maintained a practice of deploying them without a warrant.

## PARTIES

8.   Plaintiff Michael D. Arrington ("Plaintiff") is a resident of Bedford, County of Middlesex, State of Massachusetts.

9.   Defendant City of Boston (the " City " or Boston") is in located Suffolk County municipal corporation incorporated under the laws of the State of Massachusetts.

10.   Defendant William Gross is the Commissioner of BPD. As Commissioner, Gross oversee and approve of BPD's policies, practices, and maintained the unlawful use of cell site simulators by his subordinates.

11.   At all relevant times to his Complaint, Commissioner Gross acted under color of state law as a police officer of the City of Boston and in the course and within the scope of his employment.

12.  Gross is sued in his official and individual capacity for his direct participation in, supervisory liability for, and failure to prevent the unlawful use of cell site simulators on Plaintiff.

13. Defendant John Doe Supervisors are anonymity supervisors in the BDP's Crime Prevention and Information Center, with responsibility for overseeing BPD's policies, practices, and customs relating to cell site simulators.

14. Also, the Gang Investigations Division responsibilities of the simulators and approving their purchase and use, and all BPD officers who served as Tech Lab supervisors.

15. At all relevant times in this Complaint, Defendant John Doe Supervisors acted under color of state law as police officers of the City of Boston and in the course and within the scope of their employment.

16. Defendant John Doe Supervisors are sued in their official and

individual capacities for their direct participation in, supervisory liability for, and failure to intervene to prevent the use of cell site simulators on Plaintiff.

17. Defendant Horace Coleman, is/was a resident of Town of Bedford, County of Middlesex, State of Massachusetts during the time of the incident knew or shown have known intentionally disclose, or endeavors, to any other person the contents of

18. any wire, oral, or electronic communication, knowing or have reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the subsection;

## JURISDICTION AND VENUE

19. Jurisdiction is proper over this civil action pursuant to 42 U.S.C. 1983 and Fourth Amendment to United States Constitution. Plaintiff alleges violations of federal law, namely the Federal "Wiretap Act" as amended by the Electronic Communications Privacy Act, 18 U.S.C. 2510-11 et seq.

20. Title 28 U.S.C. 1331 and 1343 provide Federal question jurisdiction over all Federal claims and 28 U.S.C.1367 provides supplemental jurisdiction

over state law claims and Plaintiff invokes the pendent jurisdiction of this

21. Court to hear and decide claims arising out of state law because those claims are related to Plaintiff's federal claims, are inextricably entwined and arise out of a common nucleus of related facts.

22. Plaintiff's state law claims are related to Plaintiff's federal law claims such that those claims form part of the same case of controversy under Article III of the United States Constitution.

23. Venue is proper under 28 U.S.C. 1391(b). Plaintiff is located in this judicial district, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise Plaintiff's claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

### Cell Site Simulators

24. A cell site simulator is a technological device that impersonates the cellular towers used by wireless companies and forces all cell phones within its range to transmit information to the device- and thus the police- without

the knowledge or consent of the phone's owner.

25. Acting in this manner, cell site simulators access the unique subscriber identification number and/or electronic serial number associated with each cell phone, which, in turn, can be used to identify the cell phone user and his or her location.

26. In addition to identifying cell phone users cell site simulators have other extraordinary capabilities.

27. Cell site simulators can access the content of phone calls made on cell phone.

28. Cell site simulators can access information in call logs, such as the duration, timing, and phone numbers of incoming and outgoing calls.

29. Cell site simulators can obtain text messages sent to and from a cell phone.

30. Cell site simulator can access a cell phone's Internet browsing history, showing websites accessed on the phone.

31. Cell site simulators can obtain information about the location of a cell phone, pinpointing its location with accuracy that the device can reveal whether the cell phone user is inside a particular house or apartment.

32. Cell site simulators can even track a cell phone user's location over time, thus revealing the cell phone user's cumulative movements to law enforcement.

33. Cell site simulators do not operate against only a target phone; instead they often force all phones within their geographical range, which can extend more than a mile from the device, to transmit personal data to the police.

34. Accordingly, even when police are using the device to target a specific individual, the cell site simulator trespasses upon, accesses, and impacts the cell phones of a large number of bystanders.

35. When a cell site simulator is active in a particular geographic area, it drains cell phone batteries, disrupt legitimate cell phone service, and often

forcibly redirects cell phones to a lower quality network, lending to dropped calls and reduced or eliminated service.

36.  Cell site simulators are commonly referred to as " stingrays" based on a popular model of cell site simulator sold by leading manufacturer Harris Corporation.

37.  They are also known as "IMSI- catcher" because of their ability to capture the unique "intentional mobile subscriber identity" associated with each cell phone.

### BPD's Secretive and Widespread Use of Cell Site Simulators

38.  BPD's use of cell site simulators is secretive and widespread.

39.  BPD has long refused to disclose information about its use of cell site simulators to the public and fought attempts to obtain such records in the courts choosing to conceal its use of the technology.

40.  According to documents disclosed to the ACLU, the BPD has never obtained a warrant to use controversial and highly invasive

stingray, it was in an emergency situation and therefore officers could bypass judicial oversight.   But the sparse records disclosed do not provide enough detail to confirm these claims.

41. The BPD's response to ACLU's records request continues a troubling pattern of secrecy surrounding its use of this powerful surveillance tool.

42. The department provided no training documents or internal policies or procedure specific to stingray use.   The documents disclosed do not reveal whether criminal defendants were notified  that police used a stingray to locate them.

43. Without more information, it's impossible for the public, criminal defendants, courts, or legislators to be sure that  police are using this powerful technology without violating constitutional rights.

44. In a March 2016 letter (https://aclum.org/wp-content/uploads/ 2016/07/NT-3-4-16- Supplemental-Response- 20160304.pdf) to the ACLU, BPD attorney Taub wrote that the department" only utilizes Cell Site Simulator subject to a search warrant or where exigent circumstance exist

that require immediate law enforcement action."

45. Despite this claim, the department has never gotten a search warrant to use a stingray, according to Taub. " Since approximately 2014, the Department has deployed its cell site simulator equipment on nineteen (19) occasions," Taub wrote- nine times within the department, and ten times on loan to other agencies."

46. " On each these occasions, the equipment was used solely to narrow down the location of the suspect and / or person in danger" [emphasis mine].

## GENERAL ALLEGATIONS

47. Plaintiff currently live in Bedford, Massachusetts.

48. In 1994 Plaintiff, an (African American) filed a workers compensation claim against Broward Colleges in Florida and 2012 Plaintiff, filed a complaint with the Office for Civil Rights against Miami-Dade County Public School District.

49. In December of 2013 Plaintiff relocated to Boston after he

discovered that his homeless shelter case manager /social worker and a police officer was entering his apartment without his consent, exigent circumstance or search warrant and disseminating matters of his apartment of no public concern.

50. In 2015 Plaintiff, filed civil rights complaint against Miami-Dade County Public School District. Also, in 2015 while Plaintiff, was residing at the New England Homeless Shelter when he won the lottery for apartment with AVA Theater District Apartments located in Boston.

51. During the interview process one of managing staff said to Plaintiff " they said you was going to be trouble." Plaintiff did not get the apartment.

52. Plaintiff lost his veterans mobile housing voucher. Meanwhile, at that time Plaintiff was not aware that BPD had him under surveillance without any justifications whatsoever other than to keep Plaintiff down and to interfere or prevent Plaintiff from filing timely lawsuit against Miami-Dade Public School District.

53. Defendants used the cell site simulator to undermine Plaintiff.

54. On or about May 22, 2017 Plaintiff was at the United States District of Massachusetts in Boston checking in his cell phone when a City of Boston police officer in uniform with no name tag on said to Plaintiff "you're thinking about moving to Traverse City Michigan."

55. Plaintiff had told a friend in the privacy of his apartment on his cell phone that he was thinking about moving to Traverse City Michigan and no one else.

56. Defendants deployed the cell simulator in the immediate vicinity of Plaintiff's apartment complex and Veteran Administration Hospital.

57. Defendants did not have a warrant or probable cause to search and seize the private cell phone calls of Plaintiff made in the privacy of his apartment.

58. No exigent circumstance occurred during Plaintiff's private cell phone conversation that would justified a search of any nature.

59. On May 23, 2017 Plaintiff contacted the ACLU of Boston and told the intake person what the police officer said to him and that the officer wasn't wearing a name tag. Plaintiff was told by the intake person that he would send him some documentations to read and complete.

60. June 1, 2017 Plaintiff, contacted the American Civil Liberties Union of Boston after he didn't received the documentation and was told by one of representatives at ACLU that the BPD officer said that they were trying to finding who you are taking to."

61. Plaintiff has reason to believe that Defendant BPD, was intercepting his e-mails, private instant messages and computer snooping dated back much further than the violations that occurred in 2017.

62. After, Plaintiff contacted ACLU, Defendant BPD officers started contacting Plaintiff's medical and mental health providers and disseminated Plaintiff's medical and mental health information to the residents of Bedford Green Apartments.

63.  Plaintiff has reason to believe Defendant BPD officers have been contacting his medical providers long before he contacted ACLU without his knowledge.

64.  On or about June 19, 2017 when Plaintiff, was preparing his brief for U.S. First Circuit Court of Appeals No. 17-1047 in his apartment on his personal computer Defendant Coleman a neighbor of Plaintiff who hold himself out to be a police informant, stood outside Plaintiff's apartment door and told Plaintiff what he was doing on his computer.

65.  Also, Defendant BPD's officers sent unknown pornography links to Plaintiff's computer and e-mail known as (Phishing).

66. November of 2017 during the late evening Plaintiff had conversation with his grandson in the privacy of his apartment on his cell phone and approximately two days later Coleman was outside Plaintiff's apartment door telling Plaintiff what he said to his grandson.

67.  April of 2018 Plaintiff applied for a credit card online from his personal computer in the privacy of his apartment.  Before, Plaintiff

could complete the credit application Defendant Coleman stood outside his apartment door and said" they said you just want people to see how much money you are receiving."

68. Defendant Coleman was being used to provoke criminal activity by Plaintiff.

69. March 17, 2019 Plaintiff sent his son an e-mail earlier during that day from his personal computer and called his son later during that night in privacy of his apartment on his cell phone.

70. One of the resident in the same apartment building as Plaintiff told Plaintiff about the content of his conversation with his son.

71. On numerous occasions the staff members, VA social worker and the residents of Bedford Green Apartments where Plaintiff resides would mention to him about some private conversation or what he purchased on his computer in the privacy of his apartment.

72. Defendant Coleman intentionally disseminated private matters of

Plaintiff's conversation, transaction made on Plaintiff's cell phone and personal computer located in his apartment.

73.  BPD unconstitutional prolonged deployment of the cell site simulator to intercept Plaintiff's private cell phone calls, e-mails and computer snooping caused Plaintiff unnecessary call dropping, battery drainage which result into Plaintiff replacing his computer, cell phone on at least (4) four occasions and battery replacement on at lease (1) one occasion.

74.  BPD Cell Site Simulator Operators acted pursuant to the established policy and practice of Defendant City of Boston.

75.  The Defendants Cell Site Simulator Operators obtained information from Plaintiff's private cell phone with the direct participation, knowledge, approval, and ratification of the Defendant Supervisors.

76.  Each of the Defendants Cell Site Simulator Operators acted or failed to act knowingly and intentionally, maliciously, wantonly, or with reckless or callous disregard for, or indifference to, the rights of Plaintiff.

**The City's Unconstitutional Policies and Practice**

77.  The Defendants' misconduct was undertaken pursuant to the policy and practice of Defendant City of Boston.

78.  First, the City maintains the affirmative practice of using cell site simulators to trespass upon, search, and seize personal information from the cell phones and computer without a warrant or probable cause.

79.  Second, the City directly encourages , and is thereby the moving force behind, the unconstitutional use of cell site simulators at issues here by making an affirmative, official decision not to promulgate any policy, procedure, or guideline that addresses the permissible or constitutional use of cell site simulator equipment to guide or restrict the Individual

80.  Defendants' use of cell site simulators, as well as by failing to impose any requirements that BPD officers using cell site simulators obtain written authorization from a supervisor prior to or after using the devices, or even document their use of the device in any way.

81.  The City's decision not to promulgate any written policies,

procedures, or guidelines governing the use of cell site simulators to protect the constitutional rights of Plaintiff reflects deliberate indifference.

82. Third, as a matter of policy and practice, the City directly encourage, and is thereby the moving force behind, the very type of misconduct at here by failing to adequately train and supervise the

83. Defendant Cell Site Simulator Operators regarding the permissible and constitutional use of cell site simulators on Plaintiff and such failure to do so manifest deliberate indifference.

84. The City has refused to implement written policies, procedures, guidelines or training about the use of cell site simulators, even though:

(a)  The City actual and/or constructive notice that the Individual Defendants' standardless use of cell site simulators would result in widespread constitutional rights violations;

(b)  The City had actual and/ or constructive notice that the adoption of written policies, procedure, guidelines, and training restricting the

use of cell site simulators was necessary to avoid a substantial risk of constitutional violations; and,

(c)   The standardless use of cell site simulators by the Individual Defendants created an obvious risk of constitutional violations, both because of the power of cell site simulator technology and because of the inability of the public and media to detect its use and thus report abuses.

85.  Finally, the constitutional violations described in this Complaint were also undertaken pursuant to the policy and practice of the City of

86.  Boston in that they were committed with the knowledge, approval, and/or ratification of persons with final policymaking authority for City of Boston and BPD, or were committed by persons with such final policymaking authority.

87.  The ratification and authorization of this misconduct by these final policymakers constituted the official policy of the City of Boston, and

88.  the final policymakers were deliberately indifferent to the risk that

these policies, practices, and customs would lead to the violation of Plaintiff's constitutional rights.

## The Defendant Supervisors' Misconduct

89.  The Defendant Supervisors directly participated in, knew of, approve of, and ratified the warrantless use of cell site simulators in violation of the rights of Plaintiff.

90.  The Defendant Supervisors, at all times material to this Complaint, had promulgated, and/ or were aware the City had promulgated and

91.  maintained the above-described policies, practices, and customs regarding cell site simulators, the maintenance of which would cause preventable constitutional violations.

92. The Defendant Supervisors oversaw, endorse, condoned, and acquiesced in the above- mentioned policies, practices, and customs, and refused to take steps to correct them, turning a blind eye to repeated and systemic violations of constitutional rights of Plaintiff.

93. The Defendant Supervisors were, at all times material to the Complaint, deliberately indifferent to the rights of Plaintiff as evidenced by their acquiescence to and support of these policies and their obvious consequences.

94. Each of the Defendant Supervisors acted or failed to act knowingly, intentionally, maliciously, wantonly, and/ or with reckless or callous disregard or indifference to the rights of Plaintiff.

## FIRST CAUSE OF ACTION

**42 U.S.C. 1983 Fourth Amendment Unlawful Search and Seizure Against Defendants City of Boston, Gross and John Doe Supervisor Cell Site Simulator Operators**

95. Plaintiff incorporates each paragraphs 47-94 of this Complaint as if fully restated here.

96. Defendants City of Boston, Gross and BPD supervisor Cell Site Simulator Operators decision to seize and disseminate Plaintiff's private conversation without Plaintiff's knowledge violated Plaintiff's rights to be free from unreasonable search and pursuant to the Fourth and fourteenth of

the United States Constitution.

97.   Defendants' actions have been intentional and willful and exhibit a conscious disregard or reckless indifference to Plaintiff's rights.

98.   The misconduct describe in the Count has been undertaken pursuant to the custom, policy and/or practice of Defendant City of Boston, such that Defendant City is liable.

99.   The acts and omissions alleged herein constitute reckless, callous and deliberate indifference to Plaintiff's federal protected rights entitling Plaintiff to punitive damages against Defendants.

100.   As a direct and proximate result of the afore alleged willful and reckless acts of omissions of Defendants, Plaintiff was deprived of his federally protected rights in violation of 42 U.S.C. 1983, and has suffered damages, including, but not limited to significant emotional and psychological distress.

WHEREFORE, Plaintiff respectfully pray the Court award Plaintiff relief as follows:

A.   Award compensatory damages in favor of Plaintiff and against Defendants in an amount reasonable and appropriate;

B.   Award punitive damages in favor of Plaintiff and against Defendants in an amount reasonable and appropriate.

## SECOND CAUSE OF ACTION

**42 U.S.C. 1983  Failure to Intervene Against Defendants Gross and John Doe Supervisor Cell Site Simulator Operators.**

101.  Plaintiff incorporates each paragraphs 47-94 of this Complaint as if fully restate here.

102.  As described more fully above, Defendant Gross Defendant BPD high ranking official with corrective action authority and Individual Defendants BPD John Doe Supervisor Cell Site Operators knew or should have known and failed to stop or prevent and had a reasonable opportunity to stop the violation of Plaintiff's constitutional rights who was subjected to the unconstitutional use of cell site simulators, had they been so inclined. They failed to do so.

103. The Individual Defendants were actions were undertaken intentionally, with malice, and/ or with reckless indifference to the rights of Plaintiff.

104. As a direct and proximate result of Defendants' misconduct, the rights of Plaintiff was violated and he suffered injuries including invasions of his privacy and property.

105. These injuries were caused by Defendant BPD employees, including but not limited to the named Defendants who acted pursuant to the policies and practices of the City of Boston.

WHEREFORE, Plaintiff respectfully pray the Court award Plaintiff relief as follows:

A. Award compensatory damages in favor of Plaintiff and against Defendants in an amount reasonable and appropriate;

B. Award punitive damages in favor of Plaintiff and against Defendants in an amount reasonable and appropriate.

## THIRD  CAUSE OF ACTION

### 18 .S.C.A. 2510 ET SEQ.("WIRETAP ACT")  Against  Defendant  Coleman

106.  Plaintiff  incorporates  each  paragraphs  47-94  of this  Complaint as  if  fully  restate  here.

107.  Defendant  Coleman  engaged  in  the following  acts  in  violation of  federal  law:

(a)  Defendant  intentionally  intercepted,  endeavored  to  intercept, or  procured  other  persons  to  intercept  oral  communication;

(b)  Defendant  intentionally  disclosed, or  endeavored  to  disclose,  to  other  persons  the  contents  of  oral  communication, knowing  or  having  reason  to  know  that  the  information  was  obtained  through  the  interception  of  a  wire,  oral or  electronic  communication  in violation  of the above- referenced  law;  and/or

(c)  Defendant  intentionally  used,  or  endeavored  to use,  the  contents  of  oral  communication,  knowing or  having  reason  to  know  that  the  information

was obtained through the interception of a wire, oral or electronic communication in violation of the above referenced law.

108.  As a result Plaintiff suffered harm as a result of Defendant's violation of the ECPA.

WHEREFORE, Plaintiff respectfully pray the Court award Plaintiff relief as follows:

A.  Award damages as set forth in 18 U.S.C.A. 2520, including but not limited to statutory damages of Ten Thousand Dollars ($10,000.00) in Plaintiff's favor and against Defendant.

B.  Award punitive damages in favor of Plaintiff and against Defendant in an amount reasonable and appropriate.

## FOURTH CAUSE OF ACTION

**Article XIV of the Massachusetts Constitution Against Defendants City of Boston, Gross and John Doe Supervisor Cell Site Simulator Operators**

109.  Plaintiff incorporates each paragraphs 47-94 of Complaint as of fully restate here.

110.  Defendants violated the rights of Plaintiff to be free of unreasonable searches and invasion of communication as guaranteed by Article XIV of Massachusetts Constitution.

111. Defendants' actions were intentional, willful, and exhibited a conscious disregard or reckless indifference to the rights of Plaintiff.

112. The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Boston, such that Defendant City of Boston is liable, as described in the above paragraphs.

113.  As a result of the Individual Defendants' misconduct described in this Count, undertaken pursuant to the City's policy and practice, Plaintiff has suffered injury, including invasion of privacy and property.

WHERREFORE, Plaintiff respectfully pray the Court award Plaintiff relief as follows:

A.  Award compensatory damages in favor of Plaintiff and against Defendants in amount reasonable and appropriate;

B.   Award punitive damages in favor of Plaintiff and against Defendants in an amount reasonable and appropriate.

## FIFTH CAUSE OF ACTION

**Invasion of Privacy Against Defendants City of Boston, Gross and John Doe Supervisor Cell Site Simulator Operators**

114.   Plaintiff incorporates each paragraphs 47-94 of this Complaint as if fully restate here.

115.   Defendants' use of cell site simulators intrude upon the privacy of Plaintiff without his authorization.

116.   Defendants' intrusive use of cell site simulators was offensive and objectionable to a reasonable person.

117.   Defendants' intrusive use of cell site simulators caused Plaintiff injury, including invasions of his privacy and property.

WHEREFORE, Plaintiff respectfully pray the Court award Plaintiff relief as follows:

A.   Award compensatory damages in favor of Plaintiff and against

Defendants in an  amount reasonable  and  appropriate;

B.   Award  punitive  damages  in  favor  of  Plaintiff  and  against  Defendant in  an  amount  reasonable  and  appropriate.

## SIXTH CAUSE OF ACTION

**Respondeat  Superior  Against  Defendant  City of  Boston**

118.   Plaintiff  incorporates  each  paragraphs  47-94  of  this  Complaint as  if  fully  restate  here.

119.  In  committing  the  acts  alleged  in  the  preceding  paragraphs, the Individual  Defendants  were  all  members  and  agents  of  City  of  Boston  acting at  all  time  relevant  times  within  the  scope  of  their  employment.

120.  Defendant  City of  Boston  is  liable  as  principal  for  all  state law torts  committed  by  its  agents.

WHEREFORE, Plaintiff  respectfully  pray  the  Court   award  Plaintiff  relief  as follows:

A.  Award compensatory damages in favor of Plaintiff and against

Defendants in an amount reasonable and appropriate.

## JURY DEMAND

Plaintiff respectfully demand trial on all issues so triable.


Dated:  June 25, 2020

Respectfully submitted,

Pro se  Michael D.  Arrington
204 Pride Way
Bedford, Massachusetts 01730
(781) 652-1479
michaelarrington31@yahoo.com